**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 02-606-C**

**CHARLES M. ADAMS,**                                                            **PLAINTIFF,**

**V.**                    **MEMORANDUM OPINION AND ORDER**

**JOHN E. POTTER,**                                                     **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This action is before the court upon the defendant's second motion for summary judgment (DE 23). The defendant asserts, as he did in his first motion for summary judgment, that the plaintiff has not demonstrated that he is a "qualified individual with a disability" and therefore has no claim as a matter of law.

The court adopts the factual summary stated in Judge Johnstone's order entered August 7, 2003 (DE 12). The plaintiff alleges that his employer discriminated against him on the basis of a disability in violation of federal law. He further claims that the Merit Systems Protection Board ("MSPB") erred in finding that he was not placed on enforced leave or improperly terminated from his employment. The court reviews the facts *de novo* with respect to the plaintiff's discrimination claim and reviews the MSPB's decision for an abuse of discretion. 5 U.S.C. §§ 7702, 7703(b)(1), 7703(c)(1).

Under the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.*, "a plaintiff must show that: 1) he is an individual with a disability; 2) he is 'otherwise qualified'

to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap" in order to prevail. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996); §12111(8).

### I. Disability Discrimination Claim

#### 1. Individual with a Disability

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." §12112(a). A major life activity has been construed to include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Black v. Roadway Express, Inc.*, 297 F.3d 445, 449 (6th Cir. 2002). The terms "substantially" in "substantially limits" and "major" in "major life activity" must be "interpreted strictly to create a demanding standard for qualifying as disabled. . . ." *Toyota Motor Mfg. Ky. Inc. v. Williams*, 534 U.S. 184, 196-97 (2002).

The plaintiff claims that he is disabled as a result of back injuries and back surgeries. While the plaintiff was employed by the defendant, he underwent two back surgeries in March 1998. After the surgeries, the plaintiff's treating physician, Dr. Puno, referred the plaintiff for a functional capacity evaluation ("FCE"), the results of which were reported to Dr. Puno on September 28, 1998.

The FCE showed that Mr. Adams was able to lift no more than 39 pounds frequently, he was able to reach forward and overhead frequently, and squat, stoop, bend, and lift or handle material frequently.  On October 12, 1998, Dr. Puno indicated that the plaintiff could return to work on October 19, 1998, with restrictions as outlined by the FCE.  On October 20, Dr. Puno completed a light duty evaluation ("LDE") for Mr. Adams, restricting the plaintiff to no more than 20 - 30 minutes of walking, standing, climbing, or driving per day.  The LDE also restricted the plaintiff from working more than four hours per day.  The same day Dr. Puno completed the LDE, he signed a United States Postal Service ("USPS") Health Unit Medical Form stating that Mr. Adams could return to work on October 26.  On a note written November 4, 1998, Dr. Puno indicated that the plaintiff would be unable to return to work until November 5, 1998.  In a letter dated November 6, 1998, Dr. Puno wrote that he believed that Mr. Adams could perform the duties of a markup clerk.  On December 2, 1998, Dr. Puno wrote a letter stating that the physical therapist who completed the FCE would determine Mr. Adams's restrictions upon returning to work, then Dr. Puno would review them and, if he agreed, would sign the recommendation.  Dr. Puno further stated that he believed that the plaintiff was capable of attending flight school.  On March 19, 1999, in a letter to USPS, Dr. Puno stated that the restrictions he placed on Mr. Adams on October 20, 1998, remained current and would probably become permanent, but that Mr. Adams should be able to work eight hours per day.  In July

3

1999, Dr. Puno completed a second LDE leaving the walking, standing, and driving portions blank, and indicating that Mr. Adams could climb only 30 minutes per day and could work for eight hours per day. On August 10, 1999, Dr. Puno sent a second letter to USPS with language identical to the October 1998 letter indicating the likelihood that the plaintiff's restrictions would become permanent. On December 22, 1999, a second FCE was completed. The examiner stated that Mr. Adams was able to lift, carry, push/pull, kneel, crouch, stand, walk, climb stairs, reach overhead, and twist on a frequent basis. Further, Mr. Adams could sit, drive, walk, and reach forward constantly. Following this evaluation, in February 2000, Dr. Puno wrote that Mr. Adams had no restrictions "so far as activities concerning driving a car, sexual relations, or ordinary activities of daily living." Dr. Puno imposed lifting restrictions and advised against playing contact sports. On February 9, 2000, Dr. Auerbach, an independent medical examiner, indicated that the plaintiff could work at a position requiring no repetitive bending or stooping, no twisting and no heavy lifting. Then, on March 26, 2001, at his deposition, Dr. Puno testified that the restrictions placed on Mr. Adams limiting his standing, walking, and driving to twenty or thirty minutes still applied. (Dr. Puno Deposition, p. 22)

      The plaintiff argues that he is limited in the major life activities of sitting and standing. (Plaintiff's Response, pp. 18-19) There is no evidence in the record to indicate that the plaintiff's ability to sit is limited. However, there is evidence in the

record, including the opinions of Dr. Puno and the plaintiff's testimony, to indicate that the plaintiff is able to stand for only 30 minutes. While some of Dr. Puno's opinions are contradicted by his own statements (compare the letter written in February 2000 indicating no restrictions driving a car with deposition testimony given in March 2001 stating driving limited to 30 minutes), the second FCE, and other evidence in the record, his opinions along with the plaintiff's testimony create a genuine issue of material fact as to whether the plaintiff is substantially limited in the major life activity of standing.

### 2. "Otherwise Qualified" to Perform Job Requirements

A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds . . . ." 42 U.S.C. § 12111(8). It is the plaintiff's burden to show that he could be reasonably accommodated. *Walsh v. UPS*, 201 F.3d 718, 725 (6th Cir. 2000).

The mail handler position requires heavy lifting (up to 70 pounds) and carrying (over 45 pounds) and constant walking and standing (8 hours per day). The defendant submitted documentation of these physical job requirements. The plaintiff is permanently restricted from heavy lifting (over 39 - 50 lbs) and standing and walking for longer than 30 minutes. The plaintiff asked that he be permitted to work seated for at least half of the workday and that he be provided assistance in lifting 70 pounds. These requests would have eliminated essential functions of the

mail handler position and the defendant is not required to accommodate the plaintiff by eliminating an essential job function. *Jasany v. United States Postal Service*, 755 F.2d 1244, 1250-1251 (6th Cir. 1985). The plaintiff has not refuted the defendant's proof that his requested accommodations would eliminate essential functions of the mail handler job. He asserts, however, that the defendant was required to provide an alternate position that the plaintiff could perform.

The plaintiff claims that he should have been accommodated with the provision of a "light duty" position, or by assignment to an open markup clerk position. The Collective Bargaining Agreement ("CBA") that applies to the plaintiff requires five years of postal service to qualify for a permanent "light duty" assignment.[1] As the plaintiff had been employed with the defendant for less than five years, assignment to a "light duty" position was not a reasonable accommodation. *See US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) (accommodation conflicting with seniority system ordinarily not reasonable). The plaintiff has presented no special circumstances entitling him to such an accommodation. As to the position of markup clerk, the defendant's evidence

---

[1] While the plaintiff claims that the requirement of a minimum of five years of service does not apply to him because he was not under the Civil Service Retirement System, the CBA makes no such exclusion. Article 13.2 B "Permanent Reassignment" states:
> Any ill or injured full-time regular or part-time flexible employee having a minimum of five years of postal service . . . can submit a voluntary request for permanent reassignment to light duty or other assignment to the installation head if the employee is permanently unable to perform all or part of the assigned duties.

6

shows that the lifting and carrying requirements are similar to those of the mail handler position. Furthermore, there is no evidence in the record that any such positions were available or that the plaintiff applied for any alternate positions.

### 3. Discharged Solely Based on Handicap

Finally, in order to prevail in his discrimination claim, the plaintiff must present evidence that he was discharged solely because of his handicap. *Monette*, 90 F.3d at 1178. "The Rehabilitation Act forbids discrimination based on stereotypes about a handicap, but it does not forbid decisions based on the actual attributes of the handicap." *Pesterfield v. Tennessee Valley Auth*., 941 F.2d 437, 443 (6th Cir.1991). An employer may make an employment decision adverse to a handicapped person if the person's handicap causes him to be unable to perform an essential function of the job. *Burns v. Columbus*, 91 F.3d 836, 842 (6th Cir. 1996)(citations omitted). As discussed above, the plaintiff is unable to perform essential functions of the mail handler position. The plaintiff failed to show that he was otherwise qualified for his position with or without reasonable accommodations or that he was improperly discharged solely because of his handicap; he has not presented a *prima facie* case of disability discrimination.

### II. Merit Systems Protection Board Decision Appeal

The plaintiff also claims that he was placed on enforced leave when the defendant failed to allow him to return to work in November 1998. He appeals the MSPB's determination that he was not placed on enforced leave. The MSPB based

7

its decision on the facts that (1) the defendant did not initiate the plaintiff's absence from work; (2) the plaintiff was unable to perform the essential functions of his former position as mail handler; (3) there were no other positions within the plaintiff's restrictions available; and (4) the plaintiff was ineligible for light duty assignment pursuant to the Collective Bargaining Agreement.  In light of the court's determinations above, the evidence in the record, and the narrow scope of the court's review, the court finds that the decision of the MSPB was reasoned and supported by substantial evidence.  *See Jones v. Farm Credit Admin*., 702 F.2d 160 (8th Cir. 1983).  The plaintiff has provided no basis for the court to determine that the decision of the MPSB was irrational.  *See id.*

As the plaintiff has not made out a *prima facie* case for disability discrimination or presented evidence to show that the MSPB abused its discretion, he cannot prevail in this action.  Accordingly,

**IT IS ORDERED** that the defendant's second motion for summary judgment (DE 23) is **GRANTED**.

Signed on  April 20, 2005

*Jennifer B. Coffman*
**Jennifer B. Coffman, Judge**
**United States District Court**

8